UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NAIL ALLIANCE, LLC, a Delaware limited liability company, and NAIL ALLIANCE – NORTH AMERICA, INC., a California corporation,<br><br>Plaintiffs,<br><br>-against-<br><br>TTN BEAUTY, an entity of unknown origin, LUXE NAILS & SPA, an entity of unknown origin, TAI NGUYEN, an individual, KY M. NGUYEN, GIAU NGUYEN, an individual, CUONG HUNG NGUYEN, an individual, and DOES 1-10, INCLUSIVE,<br><br>Defendants. | Civil Action No.: 21-cv-3140<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION** |

On February 25, 2021, the Court conducted a show cause hearing in this matter. On March 9, 2021, the Court conducted an additional hearing with no opposition or appearance by Defendants TTN Beauty, Luxe Nails & Spa, Tai Nguyen, Ky M. Nguyen, Giau Nguyen, Cuong H. Nguyen and "Doe" Defendants 4 to 10 (collectively, "Defendants"). Plaintiffs appeared through counsel after conducting a seizure with the United States Marshal and filing a First Amended Complaint and a Declaration of Darnell Stanislaus, Esq. in support of Plaintiffs' Compliance and Inventory Report as ordered on February 25, 2021. On February 25, 2021, the Court issued an Temporary Sealing Order, which has since been vacated, along with a Temporary Restraining Order and Seizure Order, an Order to Show Cause ("OSC") re: Preliminary Injunction, a Substitute Custodial Order, and an Order for Expedited Discovery (collectively, the "TRO") (Dkt. 9).

1

Having reviewed the Declaration of Darnell Stanislaus ("Stanislaus Decl.") and Plaintiffs' First Amended Complaint ("FAC"), along with all of the papers filed in support of the TRO, including the Declaration of GariDawn Tingler ("Tingler Decl."), and having heard oral argument in support of the OSC and GOOD CAUSE appearing therefore, the Court hereby GRANTS Plaintiffs' motion for a preliminary injunction and finds as follows:

1. This Court has federal-question subject matter jurisdiction over the claims arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the Patent Act, 35 U.S.C. § 101 *et seq.*, and supplemental jurisdiction over the state law claim.

2. This Court has personal jurisdiction over the Defendants under, *inter alia,* N.J. Ct. R. 4:4-4 since Defendants: (i) reside in New Jersey; (ii) have transacted substantial business from, to, and within New Jersey; (iii) have brought, sold, and/or solicited the sales of counterfeit products from, to and within New Jersey; (iv) have induced or enabled, or otherwise aided and abetted or conspired with others in the distribution of counterfeit products from, to or within New Jersey; (v) have participated in distribution of counterfeit products, which distribution Defendants knew would have, and has had, a substantial impact in New Jersey; and/or (vi) otherwise have sufficient contacts to New Jersey that give rise to the claims asserted herein, such that it would be fair and reasonable and consistent with the United States Constitution to exercise personal jurisdiction over each of the Defendants. (*See* FAC ¶ 13.)

3. Venue is proper in this Court under 28 U.S.C. § 1391.

4. The GELISH mark is protected by multiple federal trademark registrations, including United States Trademark Registration Nos. 4,096,115 (standard character mark) and 3,857,946 (design plus words) for use in nail care preparations. (*See* FAC, Exs. 1-2.)

5. The GELISH trade dress, which includes a unique three-dimensional configuration and scrollwork pattern, is protected by federal United States Trademark Registration Nos. 4,473,557 and 4,473,558. (*See* FAC, Exs. 3-4.)

6. Plaintiffs have further distinguished GELISH products with artistically distinctive and visually useful bottles, which are protected by patents. *See* U.S. Design Patent No. D 656,824 (FAC, Ex. 5); and U.S. Patent No. 8,528,739 (FAC, Ex. 6). After prior counterfeiting activity, Plaintiffs upgraded to a more expensive glass bottle that utilized the same trade dress.

7. The GELISH trade dress has clean lines and distinctive scroll artwork on a white background, and features the dominant GELISH marks as illustrated below. These unique and inherently distinctive features of the GELISH brand bottle are protected as a trade dress under both state and federal law. (Tingler Decl. ¶¶ 13-15.)





8. The preceding federally registered and common law GELISH trademarks, design marks and trade dress are collectively referred to herein as the "GELISH marks."

9. Nail Alliance LLC is the owner of the GELISH marks. Nail Alliance – North America, Inc. has the exclusive worldwide license from Nail Alliance LLC to use the GELISH mark and has never abandoned the same. (Tingler Decl. ¶¶ 10, 15.)

10. None of the Defendants is an authorized distributor of Nail Alliance's GELISH brand products. (Tingler Decl. ¶ 11.)

11. Plaintiffs have established a substantial likelihood of success on the merits of their counts for violations of the Lanham Act, including for trademark infringement, counterfeiting, and unfair competition. Both in connection with a controlled purchase of counterfeit GELISH brand foundation and top coat and seizure of counterfeit GELISH brand gel polish, Plaintiffs have shown that Defendants have used at their salon and have sold over the Internet counterfeit and spurious products, and/or are participating in the sale, distribution and use of counterfeit and spurious products through TTN Beauty and/or Luxe Nails & Spa. Based on copies of licenses and personal identification, Facebook accounts and email, Plaintiffs have connected each Defendant to the other and to the counterfeit operation, including as an owner, director, officer, member, partner, employee, and/or agent of the other Defendants, or otherwise acting in concert or participation with them. (Stanislaus Decl. ¶¶ 3-8; Tingler Decl. ¶¶ 37-42, Exs. 7-8.)

12. Based on the unrebutted evidence of the low-quality nature of the counterfeit product, which has resulted in actual confusion and customer complaints, and a substantial drop in sales of authentic GELISH brand products (*see* Tingler Decl. ¶¶ 18-30, 34-35, 43-50), Plaintiffs have suffered, are suffering, and absent injunctive relief, will continue to suffer irreparable harm for which there is no adequate remedy at law.

13. Plaintiffs have demonstrated that if a preliminary injunction does not issue, (a) more counterfeit and infringing products bearing the GELISH marks will appear in salons and

stores, and (b) more consumers will or are likely to be misled, confused and disappointed by the quality of perceived GELISH brand products, resulting in further irreparable injury to Plaintiffs' goodwill and reputation.  This finding also tips the public-interest factor of the TRO inquiry in favor of issuing the TRO.

14. The Declarations of GariDawn Tingler and Darnell S. Stanislaus, which evidence the counterfeiting activity as well as misrepresentations by or on behalf of Defendants trying to conceal and deny responsibilities for the same, further establish good cause to believe that there is the strong likelihood of the concealment or transfer of funds.  While district courts generally do *not* have the authority to preliminarily restrain assets where a plaintiff seeks a money judgment, *Grupo Mexicano de Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 331 (1999), there is an exception to the general ban on prejudgment asset restraints where an equitable remedy is sought.  *Id.* at 325 (citing *Deckert v. Indep. Shares Corp.*, 311 U.S. 282, 287-88 (1940) (approving preliminary restraint where rescission and restitution sought)).

15. Here, Plaintiffs seek an accounting and disgorgement of profits under 15 U.S.C. § 1117(a) and 35 U.S.C. § 289.  If Defendants were to file appearances and subject themselves to discovery, there is a likelihood that Plaintiffs would obtain an accounting of profits. Trademark, like patent holders, owners need to "prove defendant's sales only; defendant must prove all elements of costs or deduction claimed."  15 U.S.C. § 1117(a); 35 U.S.C. § 289.  To the extent Plaintiffs can prove sales numbers either through discovery against Defendants or discovery on third-parties (for example, by serving third-party payment hosting services, such as PayPal, or financial institutions), then an accounting of profits may be appropriate.  If and to the extent that any restraint might be too broad, Defendants may file challenges to the scope of the preliminary injunction by submitting evidence that some or all of the money has other sources.

The balance of factors tips in favor of Plaintiffs being able to freeze assets of the counterfeiting and infringing Defendants, who likely would seek to transfer the money elsewhere.

16. Good cause exists for entry of an order prohibiting Defendants, their agents, servants, employees, assigns, and attorneys, and any and all persons in active concert or participation with Defendants, including any successor thereof, from destroying counterfeit and infringing products and related materials, as well as concealing assets, computer, and business records and other evidence regarding the same.

17. The balance of potential harm to Defendants in restraining their trading in GELISH goods is outweighed by the ongoing risk of harm to Plaintiffs and to their reputation and goodwill as a manufacturer of high quality products if such relief is not granted.

18. As noted earlier, the public interest and the balance of equities favor issuance of the preliminary injunction to protect Plaintiffs' trademark interests, to protect the public from fraud and confusion regarding counterfeit and spurious goods, and to protect consumers from mislabeled and potentially harmful nail products.

19. The Court further confirms its prior order granting expedited discovery in connection with the TRO and seizure order, particularly in consideration of the administration and interests of justice favoring Plaintiffs balanced against any potential prejudice to Defendants. Plaintiffs have demonstrated good cause that absent an order to expedite discovery, Plaintiffs will likely suffer a denial of evidence and information necessary to fully develop their case. The covert counterfeit activities and evidence of such activities are likely to be concealed or destroyed absent an order. Further, the order to expedite discovery in this matter will not unduly prejudice Defendants.

**ACCORDINGLY, IT IS** on this 10th day of March, 2021:

## PRELIMINARY INJUNCTION ORDER

**ORDERED** that Defendants, and each of them, along with their respective officers, directors, employees, agents, attorneys, subsidiaries, and distributors, and any and all persons in active concert or participation with them, including but not limited to financial institutions, financial service providers, and/or mobile payments/processing companies and/or platforms (*e.g.*, eBay, PayPal, Venmo, GoDaddy), to the extent Defendants are selling or offering to sell any actual or perceived GELISH brand nail products, are enjoined pending a judgment after the trial in this matter or further order of this Court from:

a. directly or indirectly manufacturing, purchasing, importing, advertising, promoting, offering to sell, selling, distributing, transferring, concealing, or otherwise disposing of any products bearing any of the GELISH marks or bottle design, or any confusingly similar marks or bottle design, unless Plaintiffs confirm in writing that the products are actually manufactured or distributed by Plaintiffs; and

b. secreting, concealing, destroying, selling off, transferring, or otherwise moving or disposing of: (i) any products or promotional materials, not manufactured or distributed by Plaintiffs, bearing any of the GELISH marks, or any confusingly similar marks, trade dress or bottle design; (ii) any evidence relating to the manufacture, purchasing, importation, advertising, promotion, distribution, sale, offer for sale, or transfer of any products bearing any GELISH mark or confusingly similar mark or bottle design; and (iii) financial income or assets relating to any account used in

connection with the sale of any counterfeit or spurious "GELISH" brand products or look-a-like products, such as described herein, including but not limited accounts held at, or maintained with, financial institutions, financial service providers, and/or mobile payments/processing companies and/or platforms (*e.g.*, eBay, PayPal, Venmo).

**CONTINUING OBLIGATIONS UNDER SEIZURE ORDER**

**IT IS FURTHER ORDERED** that, until a final judgment or resolution of this proceeding, absent further order from the Court, having conducted a seizure pursuant to 15 U.S.C. § 1116(d)(9) and the TRO, the United States Marshals Service or other Federal law enforcement officials (such as officers or agents of the United States Customs Service, Secret Service, Federal Bureau of Investigation, or Post Office) or State or local law enforcement officers, together with Plaintiffs' representatives, are not to publish to anyone other than the Court, Defendants and their legal representatives, and Plaintiffs and their legal representatives, any recording, videotape, photographs or notes of the seizure, which shall be used only for this proceeding.

**IT IS FURTHER ORDERED** that, with respect to the items seized (*see* Stanislaus Decl.), due care shall be taken by the custodian of those items (Plaintiffs' counsel) to preserve and keep in good order any of the seized items or property or assets until a final judgment or resolution of this proceeding, at which time the seized items may be destroyed or otherwise disposed of absent further order from the Court.

**IT IS FURTHER ORDERED** that if after the seizure outlined above Defendants obtain additional counterfeit or spurious goods as described herein, whether by manufacturing, importation, delivery, or otherwise, Defendants shall immediately notify the Court and deliver

them into the custody of Plaintiffs' counsel or to the United States Marshal to deliver to Plaintiffs' counsel within two (2) business days.

## SUBSTITUTE CUSTODIAN ORDER

**IT IS FURTHER ORDERED** that Plaintiffs, through their counsel, investigators, and representatives, have accounted for and will continue to account for all property seized pursuant to the TRO and have compiled and shall continue to compile as necessary a written inventory of all such property and shall provide a copy of the inventory to the United States Marshal and a copy of the inventory shall be (and has been) submitted to the Court on or before the hearing on March 10, 2021.

**IT IS FURTHER ORDERED** that Plaintiffs' counsel, Polsinelli PC, will act as substitute custodians of any and all property seized pursuant to this Order and shall hold harmless the United States Marshals Service or other law enforcement officers executing this Seizure Order and their employees from any and all claims asserted in any court or tribunal arising from any acts, incidents, or occurrences in connection with the seizure and possession of any of Defendants' property, including any third-party claims.  Any and all products seized pursuant to this Order shall be maintained at a secured storage facility.  Defendants' counsel shall have supervised access to the stored goods and the seized business records; and

## COMPLIANCE REPORT

**IT IS FURTHER ORDERED** that Defendants shall file with the Court and serve on counsel for Plaintiffs within five (5) days after the service of this Order, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the TRO and this Order.  Specifically, the report shall include a Certification that Defendants have identified all relevant financial accounts and surrendered to law enforcement officials all documents and property subject to seizure authorized herein; and

## EXPEDITED DISCOVERY ORDER

**IT IS FURTHER ORDERED** that Plaintiffs are permitted to immediately submit ten (10) Requests for Production of Documents on Defendants with a command for verified responses and document production be produced within three (3) business days of service, and that Defendants are to sit for depositions as noticed by Plaintiffs within seven (7) business days of service; and

## SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that Plaintiffs shall serve this Order upon Defendants within three (3) days of the date of this Order.

**SO ORDERED.**

s/ Claire C. Cecchi<br>**CLAIRE C. CECCHI, U.S.D.J.**